# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| Sustainable Restaurant Holdings, Inc., *et al.*,[1] | ) Case No. 20-11087 (___) |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |
|  | ) |

## DECLARATION OF MATTHEW PARK IN SUPPORT
## OF DEBTORS' FIRST DAY MOTIONS AND APPLICATIONS

Matthew Park declares as follows:

1. I am the President and Interim Chief Executive Officer of Sustainable Restaurant Holdings, Inc. and its debtor affiliates, the debtors and debtors-in-possession in the above-captioned chapter 11 cases (each a "Debtor", and collectively, the "Debtors" or the "Company"). On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). I am familiar with the day-to-day operations, businesses, and financial affairs of the Debtors.

2. I submit this declaration (the "First Day Declaration") to provide the Court and other parties in interest with an overview of the Debtors' businesses and to describe the circumstances compelling the commencement of these chapter 11 cases. I also submit this First

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Sustainable Restaurant Holdings, Inc. (6430); SRG Operations, LLC (0486); Quickfish LLC (7391); Bamboo Sushi, LLC (9009); Quickfish Pearl District LLC (9060); Quickfish SW Stark, LLC (1879); Quickfish Slabtown LLC (7391); Quickfish Avanti (Bamboo Sushi Avanti, LLC) (9009); Bamboo Sushi NE Alberta, LLC (7610); Bamboo Sushi Lake Oswego, LLC (9484); Bamboo Sushi SW 12th, LLC (7382); Bamboo Sushi Denver Lo-Hi, LLC (4045); Bamboo Sushi NW 23rd, LLC (1361); Bamboo Sushi Seattle Cap Hill, LLC (9009); Bamboo Sushi U Village Seattle, LLC (9052); Bamboo Sushi Embarcadero SF, LLC (5837); Bamboo Sushi Bishop Ranch, LLC (3763); Bamboo Sushi Kierland Scottsdale, LLC (0483); Bamboo Sushi Commissary Kitchen, LLC (2194); Bamboo Sushi Biltmore Phoenix, LLC (9412); Bamboo Sushi Valley Fair, LLC (2887); Bamboo Sushi Washington Square, LLC (5066). The Debtors' headquarters address is: 920 SW 6th Avenue, Suite 1200, Portland, OR 97204 and mailing address is: PO Box 3347, Portland, OR 97208. The Debtors operate restaurants under the following names: Bamboo Sushi and Quickfish.

Day Declaration in support of the first day motions[2] and applications filed by the Debtors contemporaneously herewith, or as soon as reasonably practicable hereafter, by which the Debtors seek relief enabling the Debtors to continue as going concerns, operate effectively, minimize certain of the potential adverse effects of the commencement of their chapter 11 cases and the continued effects on its business caused by the Coronavirus Disease 2019 pandemic ("COVID-19"), and preserve and maximize the value of the Debtors' estates.  I submit this First Day Declaration based on my own personal knowledge, except as expressly provided, and as my testimony, if called to testify.

## BACKGROUND

**A.     The Company's Businesses**

3.     The Company was founded in 2008 in Portland, Oregon around an original concept as the first certified sustainable sushi restaurant with a deep commitment to environmental and social change, and an underlying mission to change the way people eat – from transparency in food sourcing, to reducing their carbon footprint, to enriching local communities.

4.     The Company currently maintains ten restaurants located in Oregon, Washington, Arizona, California and Colorado and operates under the "Bamboo Sushi" and "Quickfish" brand names.  The Company's restaurants were built with an environmentally-conscious design incorporating reclaimed timber, low-flow water systems, and drawing 100% of energy from renewable sources. The Company's restaurants maintain a relaxed yet upscale atmosphere that are ideal venues for a variety of occasions: casual happy hours, large group gatherings, and intimate

---

[2]   All references to agreements, pleadings, or other documentation or summaries thereof in this First Day Declaration are qualified in their entirety by the terms set forth in the relevant agreements, pleadings, or other documents.

PHIL1 8881721v.3

*omakase* meals with empowered, informed, and passionate chefs and staff that share in the Company's values and deliver a superb guest experience.

5.   The Company's revenue for the twelve months ended December 31, 2019, was $18,028,640, up 35% from the prior year.

6.   Prior to the government mandated COVID-19 shutdown, the Debtors employed approximately 480 employees at its restaurants and corporate headquarters in Portland, Oregon. As of the Petition Date and the imposition of the government mandated COVID-19 shutdown, the Debtors employ 38 employees, 3 at the corporate headquarters and 35 restaurant level employees. None of the Debtors' employees are covered by a collective bargaining agreement.

**B.    Corporate and Capital Structure of the Company**

7.   Sustainable Restaurant Holdings, Inc. owns 100% of the interests in SRG Operations, LLC, Quickfish LLC, which itself owns 100% of the interests in certain debtor entities, and Bamboo Sushi, LLC, which itself owns 100% of the interests in certain debtor entities. A Corporate Organizational Chart is attached hereto as **Exhibit A**.

8.   As of the Petition Date, the Debtors' capital structure, on a consolidated basis, consisted of an outstanding unsecured note in the principal amount of approximately $1,499,800, unsecured trade debt of $910,000, and other potential unsecured debt of approximately $1,690,000, exclusive of potential lease termination claims, if any.

**C.    Events Leading to the Commencement of the Chapter 11 Cases**

9.   In late February and early March of 2020, the onset of the COVID-19 pandemic occurred and is continuing, which has severely disrupted the Debtors' business operations. In an effort to fight the public health crisis caused by the COVID-19 outbreak and to comply with the business closure mandates imposed by governmental authorities in the states where the Debtors

operate, the Debtors were required to cease operating in the ordinary course—all ten of the Debtors' restaurant locations have been closed for normal operations, and the Debtors were forced to furlough or lay off over 90% of their employees. The cessation of normal business operations has deprived the Debtors of vital cash flow, without which the Debtors are incapable of meeting their obligations in the ordinary course, including obligations to employees, landlords, vendors, suppliers and other creditors and claimants.

10. As the Debtors were required to suspend their in-dining service at all of their locations, they shifted to a take-out and delivery model at three of their pre-COVID 19 operating locations as they attempted to weather the COVID-19 storm. The shift in business operations has placed a significant strain on the Debtors' resources. As a result of this strain, the Debtors reassessed the viability of their business and their near-term survival, as well as and their potential post-COVID19 success.

11. To assist the management team, the Debtors engaged BMO Capital Markets ("BMO") in March 2020 to seek either debt or equity investors or a sale of the Debtors' business. BMO reached out to over 30 parties. While several parties executed confidentiality agreements and received confidential information and conducted due diligence, it became clear that the needed incremental financing was not available in the current market conditions.

12. Given the deteriorating financial and cash position of the Debtors, it became apparent that a bankruptcy or other insolvency process was likely needed. To continue the marketing process through any such process, in the beginning of May 2020, the Debtors retained SSG Capital Advisors LLC ("SSG") to continue the marketing process for the Debtors' business through a chapter 11 process. The Debtors also reached out to certain of its current equity investors to determine their interest in providing financing in connection with the filing of these chapter 11

cases and the continued pursuit of a sale or restructuring process by the Debtors. In addition to the efforts of BMO, on behalf of the Debtors, Getzler Henrich also solicited proposals for alternative debtor-in-possession financing from a variety of third-party potential lenders, including at least five lenders and financial institutions (including specialty lenders and those that routinely provide debtor-in-possession financing) to gauge their interest in providing postpetition financing on an unsecured basis, on a junior priority basis, or on more favorable economic terms than the proposed DIP Facility. No other actionable proposal or indication of interest in a debtor-in-possession financing facility was provided to the Debtors other than the proposed DIP Facility by the DIP Lenders.

13. After its engagement, SSG prepared a marketing teaser and confidential information memorandum to use to market the Debtors' business and has begun its marketing process.

14. Considering all the events previously detailed and limited liquidity to pursue strategic alternatives outside of the bankruptcy process, the Company decided to seek protection under chapter 11 of the Bankruptcy Code, pursue the sale of their business as a going concern, and commenced these chapter 11 cases.

**D.     Goals of the Chapter 11 Cases**

15. The Company commenced these chapter 11 cases to preserve value for its stakeholders, including its employees and creditors, with the hope of re-starting their operations and re-opening their previously profitable restaurants in the future when the COVID-19 crisis has passed, thus preserving as much future enterprise value as possible. Additionally, the Debtors have negotiated a debtor-in-possession financing facility that will allow the Debtors to continue to

operate, pay landlords and vendors, and have sufficient liquidity to pay the administrative costs, both operational and statutory, required in these chapter 11 cases.

16. The Debtors will be filing a motion to approve sale procedures in connection with the continued marketing of their business to establish a formal sale timeline, which will include an auction process, with a goal of further exposing the business to the market to attain the highest and best offer to be implemented pursuant to a plan process.

17. The Debtors believe that a marketing and sale process through these chapter 11 cases is in the best interests of the Company's creditors and will maximize the value of these estates

## Evidentiary Support for First Day Pleadings

18. Contemporaneously, the Debtors have filed a number of first day pleadings seeking relief that the Debtors believe is necessary to avoid irreparable harm, enable them to efficiently administer their estates and continue to operate with minimal disruption and loss of value during these chapter 11 cases and to ensure the best outcome for the Debtors, their estates, and their creditors (collectively, the "First Day Pleadings").

19. I have reviewed each of the First Day Pleadings listed on **Exhibit B** attached hereto, and the facts set forth therein are true and correct to the best of my knowledge, information and belief with appropriate reliance on corporate officers and advisors.

20. I believe that the relief requested in the First Day Pleadings is necessary to avoid immediate and irreparable harm and to allow the Debtors to operate with minimal disruption during the pendency of these chapter 11 cases.

21. The Debtors request that the relief sought in each of the First Day Pleadings be granted as critical elements in ensuring the maximization of value of the Debtors' estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true correct.

Dated: May 12, 2020

/s/ *Matthew Park*
Name: Matthew Park
Title: President and Interim Chief Executive Officer

# **EXHIBIT A**

**Corporate Organizational Chart**

**SRG – Organizational Chart**

- Sustainable Restaurant Holdings, Inc. (DE C-Corp)
  - 100% → Bamboo Sushi, LLC (OR LLC)
    - 100% → Bamboo Sushi U Village Seattle LLC (WA LLC)
    - 100% → Bamboo Sushi Washington Square, LLC (OR LLC)
    - 100% → Bamboo Sushi Seattle Cap Hill, LLC (OR LLC)
    - 100% → Bamboo Sushi Valley Fair, LLC (DE LLC)
    - 100% → Bamboo Sushi NW 23rd, LLC (OR LLC)
    - 100% → Bamboo Sushi Biltmore Phoenix, LLC (DE LLC)
    - 100% → Bamboo Sushi Denver Lo-Hi, LLC (OR LLC)
    - 100% → Bamboo Sushi Commissary Kitchen, LLC (OR LLC)
    - 100% → Bamboo Sushi SW 12th, LLC (OR LLC)
    - 100% → Bamboo Sushi Kierland Scottsdale, LLC (DE LLC)
    - 100% → Bamboo Sushi Lake Oswego, LLC (OR LLC)
    - 100% → Bamboo Sushi Bishop Ranch, LLC (DE LLC)
    - 100% → Bamboo Sushi NE Alberta, LLC (OR LLC)
    - 100% → Bamboo Sushi Embarcadero SF LLC (DE LLC)
  - 100% → SRG Operations, LLC (OR LLC) (dba Sustainable Restaurant Group)
  - 100% → Quickfish LLC (OR LLC)
    - 100% → Quickfish Pearl District LLC (OR LLC)
    - 100% → Quickfish SW Stark, LLC (OR LLC)
    - 100% → Quickfish Slabtown LLC (OR LLC)

# **EXHIBIT B**

## **First Day Pleadings**

    1.  Debtors' Motion For Entry of an Order (I) Directing Joint Administration of Their Related Chapter 11 Cases and (II) Granting Related Relief

    2.  Debtors' Motion For Entry of an Interim and Final Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Maintain Existing Business Forms, and (II) Granting Related Relief

    3.  Debtors' Motion For Entry of an Order (I) Authorizing the Debtors to File a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor and (II) Granting Related Relief

    4.  Debtors' Motion for Entry of Interim and Final Orders (I) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Utility Services, (II) Determining Adequate Assurance of Payment For Future Utility Services, (III) Establishing Procedures for Determining Adequate Assurance of Payment, and (IV) Granting Related Relief

    5.  Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing, But Not Directing, The Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief

    6.  Debtors' Motion For Entry of an Interim And Final Order (I) Authorizing, But Not Directing, the Payment of Certain Prepetition Taxes and Fees and (II) Granting Related Relief

    7.  Debtors' Motion For Entry of an Interim and Final Order (I) Authorizing, But Not Directing, the Debtors to (A) Pay Their Obligations Under Insurance Policies Entered Into Prepetition, (B) Continue to Pay Brokerage Fees, (C) Renew, Supplement, Modify, or Purchase Insurance Coverage, and (D) Honor the Terms of the Financing Agreements and Pay Premiums Thereunder, and (II) Granting Related Relief

    8.  Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain and Administer Their Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto and (II) Granting Related Relief

    9.  Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Certain Prepetition Claims of Trade Claimants, PACA/PASA Claimants, and Other Vendors, and (II) Approving the Procedures Related Thereto, and (III) Granting Related Relief

    10. Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Senior and Junior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief