**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Sustainable Restaurant Holdings, Inc., *et al.*,[1] | ) Case No. 20-11087 (JTD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Re: Docket No. 194 |
| | ) |

**ORDER CONFIRMING THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF SUSTAINABLE
RESTAURANT HOLDINGS, INC., AND ITS DEBTOR AFFILIATES**

Sustainable Restaurant Holdings, Inc. ("SRHI") and its debtor affiliates, as debtors and debtors

in possession in the above-captioned chapter 11 cases (collectively, the "Debtors")

a.    commenced, on May 12, 2020 (the "Petition Date"), the Chapter 11 cases    (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of Nebraska (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.    continued to operate their businesses and manage their properties as debtors in possession in accordance with sections 1107(a) of the Bankruptcy Code;

c.    filed on June 5, 2020 the Debtors' Status Report Pursuant to 11 U.S.C. §1188 [Docket No. 64] (the "Status Report");

d.    filed, on June 11, 2020, *Joint Chapter 11 Plan of Sustainable Restaurant Holdings, Inc. and its Debtor Affiliates* [Docket No. 70] (as may be modified, amended, or supplemented from time to time);

e.    caused the notice of the Confirmation Hearing and the deadline for objecting to confirmation of the Plan to be distributed on or about June 22, 2020 the

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Sustainable Restaurant Holdings, Inc. (6430); SRG Operations, LLC (0486); Quickfish LLC (7391); Bamboo Sushi, LLC (9009); Quickfish Pearl District LLC (9060); Quickfish SW Stark, LLC (1879); Quickfish Slabtown LLC (7391); Quickfish Avanti (Bamboo Sushi Avanti, LLC) (9009); Bamboo Sushi NE Alberta, LLC (7610); Bamboo Sushi Lake Oswego, LLC (9484); Bamboo Sushi SW 12th, LLC (7382); Bamboo Sushi Denver Lo-Hi, LLC (4045); Bamboo Sushi NW 23rd, LLC (1361); Bamboo Sushi Seattle Cap Hill, LLC (9009); Bamboo Sushi U Village Seattle, LLC (9052); Bamboo Sushi Embarcadero SF, LLC (5837); Bamboo Sushi Bishop Ranch, LLC (3763); Bamboo Sushi Kierland Scottsdale, LLC (0483); Bamboo Sushi Commissary Kitchen, LLC (2194); Bamboo Sushi Biltmore Phoenix, LLC (9412); Bamboo Sushi Valley Fair, LLC (2887); Bamboo Sushi Washington Square, LLC (5066). The Debtors' headquarters address is: 920 SW 6th Avenue, Suite 1200, Portland, OR 97204 and mailing address is: PO Box 3347, Portland, OR 97208. The Debtors operate restaurants under the following names: Bamboo Sushi and Quickfish.

"Solicitation Date"), in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as evidenced by, among other things, the Affidavit of Service [Docket No. 171] (the "Solicitation Affidavit");

f.  filed on July 1, 2020, the *Notice of Filing of Plan Supplement* [Docket no. 167] (the "Initial Plan Supplement");

g.  filed, on Jul 7, 2020, the *Notice of Filing of Second Plan Supplement* [Docket No. 175] (the "Second Plan Supplement");

h.  filed, on July 13, 2020, *the Declaration of Paul H. Deutch of Omni Agent Solutions Regarding Voting and Tabulation of Ballots Accepting and Rejecting the Joint Chapter 11 Plan of Sustainable Restaurant Holdings, Inc., and its Debtor Affiliates* [Docket No. 193] (the "Voting Report");

i.  filed, on July 13, 2020, the *First Amended Joint Chapter 11 Plan of Sustainable Restaurant Holdings, Inc. and its Debtor Affiliates* [Docket No. 194] (as may be modified, amended, or supplemented from time to time, the "Plan") [2];

j.  filed, on July 13, 2020, the *Declaration of Teresa C. Kohl in Support of Confirmation of the First Amended Chapter 11 Plan and Approval of the Sale of the Debtors' Assets* [Docket No. 196] (the "Kohl Declaration");

k.  filed, on July 13, 2020, the *Declaration of Pamela B. Corrie in Support of Confirmation of the First Amended Chapter 11 Plan and Approval of the Sale of the Debtors' Assets* [Docket No. 197] (the "Corrie Declaration");

l.  filed, on July 13, 2020, the *Declaration of David R. Campbell in Support of Confirmation of the First Amended Chapter 11 Plan and Approval of the Sale of the Debtors' Assets* [Docket No. 199] (the "Campbell Declaration");

m.  filed, on July 13, 2020, the *Memorandum of Law in Support of the First Amended Joint Chapter 11 Plan of Sustainable Restaurant Holdings, Inc. and its Debtor Affiliates* [Docket No. 200] (the "Confirmation Brief");

n.  filed, on July 13, 2020, the *Notice of Filing of Third Plan Supplement* [Docket No. 198] (the "Third Plan Supplement");

o.  filed of July 14, 2020, the Notice of Filing of Fourth Plan Supplement [Docket No. 202] (the "Fourth Plan Supplement" and together with the Initial Plan Supplement, the Second Plan Supplement, and the Third Plan Supplement, the "Plan Supplement").

This Bankruptcy Court having:

p.  set July 8, 2020 as the deadline for filing objections in opposition to the Plan;

q.  set July 8, 2020 as the deadline for voting on the Plan;

---

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

r.      set July 15, 2020 at 11:00 a.m. (prevailing Easter Time) as the date and time for the commencement of the Confirmation Hearing in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

s.      reviewed the Plan, the Voting Report, the Kohl Declaration, the Corrie Declaration, the Campbell Declaration, the Confirmation Brief, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

t.      Reviewed the Status Report;

u.      Held a status conference with respect to the Status Report on June 19, 2020;

v.      held the Confirmation Hearing;

w.      heard statements and arguments made by counsel with respect to Confirmation;

x.      considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the Confirmation Hearing;

y.      entered rulings on the record at the Confirmation Hearing held on July 15, 2020 (the "Confirmation Ruling");

z.      overruled any and all objections to the Plan and to Confirmation and all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

aa.     taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases; and all evidence proffered or adduced and all arguments made at the hearings held before the Bankruptcy Court during the pendency of these Chapter 11 Cases.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the record of the Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted in the Confirmation Order; and after due deliberation

thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and order.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:

### A. Finding of Fact and Conclusions of Law.

1.      The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with rule 52 of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Bankruptcy Rules 7052 and 9014. All findings of fact and conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith. To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such. To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing and incorporated herein) constitutes an order of the Bankruptcy Court, it is adopted as such.

### B. Jurisdiction and Venue.

2.      Venue in this Bankruptcy Court was proper as of the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Bankruptcy Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. The Debtors have confirmed their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), to the entry of a final order by the Court. The Bankruptcy Court has exclusive jurisdiction

to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

**C. Eligibility for Relief.**

3.      The Debtors were and continue to be entities eligible for relief under sections 109 of the Bankruptcy Code and Subchapter V of Chapter 11 of the Bankruptcy Code pursuant to the Small Business Debtor Reorganization Act of 2019 (the "SBRA"), Pub. L. No. 116-54, effective February 19, 2020, as amended.

**D. Pre- and Postpetition Marketing.**

4.      In the events leading up to and during the course of the Chapter 11 Cases, the Debtors explored a variety of plan structures with the goal of maximizing the value of the Estates. As explained in detail below, the Debtors' Boards, remained apprised of the Debtors' efforts to maximize value at all times and used their business judgment to make decisions on the final structure of the deal and related plan of reorganization.

5.      The Debtor' officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals that were involved with the formulation, negotiation, documentation, and approval of the filing of the Chapter 11 Cases, the Plan, and Asset Purchase Agreement, and pursued, analyzed, negotiated, and documented such documents and the transactions contemplated thereunder in good faith and made reasonably informed decisions in connection therewith, including the decision to enter into the Asset Purchase Agreement.

6.      As evidenced by the Debtors' designation of Purchaser as the successful highest and best bidder and the cancellation of the Auction, Purchaser paid reasonably equivalent value, fair saleable value, and fair value for the Debtors' assets under the Asset Purchase Agreement and the Plan.  Accordingly, Purchaser shall not be subject to any liability, personal or otherwise, as a result of consummation of the transactions contemplated by the Asset Purchase Agreement or the

2

Plan.

### E.  Commencement and Joint Administration of the Chapter 11 Cases.

7.      On the Petition Date, the Debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On May 13, 2020, the Bankruptcy Court entered an order [Docket No. 37] authorizing the joint administration of the Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b). The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) of the Bankruptcy Code.

### F.  Appointment of the Subchapter V Trustee.

8.      On May 13, 2020, the U.S. Trustee appointed Jami Nimeroff as the Subchapter V Trustee pursuant to section 1183(a) of the Bankruptcy Code [Docket No. 23].   No Official Committee of Unsecured Creditors has been appointed in these cases.

### G.  Plan Supplement.

9.      The Plan Supplement complies with the terms of the Plan, and the Debtors provided good and proper notice of the filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the facts and circumstances of the Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, the Debtors have reserved the right to alter, amend, update, or modify the Plan Supplement before the Effective Date, subject to compliance with the Bankruptcy Code and the Bankruptcy Rules.   The amendments to the Asset Purchase Agreement set forth in this Confirmation Order comply in all respects with the applicable requirements of the Plan, the Bankruptcy Code, and the Bankruptcy Rules.

### H.  Judicial Notice; Objections Overruled.

10.     The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation) the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during these Chapter 11 Cases. Any resolution or disposition of objections to Confirmation explained or otherwise ruled upon by the Bankruptcy Court on the record at the Confirmation Hearing is hereby incorporated by reference. All unresolved objections, statements, and reservations of rights are hereby overruled on the merits.

**I.  Transmittal and Mailing of Materials; Notice.**

11.     The Debtors provided due, adequate, and sufficient notice of the Plan, the Solicitation Packages, the Confirmation Hearing Notice, the Plan Supplement, and all the other materials distributed by the Debtors in connection with the Confirmation of the Plan in compliance with the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Local Rules, and the procedures set forth under Subchapter V of the Bankruptcy Code. The Debtors provided due, adequate, and sufficient notice of the Voting and Plan Objection Deadline, the Confirmation Hearing (as may be  continued from time to time), and any applicable bar dates and hearings in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  No other or further notice is or shall be required.

**J.  Solicitation.**

12.     The Debtors solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with section 1181 of the Bankruptcy Code and all other applicable sections of the Bankruptcy Code, and all other applicable rules, laws, and regulations.

**K.  Voting Report.**

13.     Before the Confirmation Hearing, the Debtors filed the Voting Report.  The Voting

Report was admitted into evidence during the Confirmation Hearing. The procedures used to tabulate ballots were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

14.　　As set forth in the Plan, Class 3 (the "Voting Class") was eligible to vote on the Plan.　Holders of Claims in Class 1 and Class 2 (collectively with Class 5, the "Deemed Accepting Classes") are Unimpaired and conclusively presumed to accept the Plan and, therefore, did not vote to accept or reject the Plan.　Consistent with the Asset Purchase Agreement, Intercompany Interests in Class 5 shall be Reinstated for administrative convenience and, therefore, are Unimpaired and conclusively presumed to have accepted the Plan.　Holders of Intercompany Claims in Class 4 either are Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or Impaired and conclusively deemed to reject the Plan, and, therefore, are not entitled to vote to accept or reject the Plan.　Holders of Claims and Interests in Classes 6 and 7 (the "Deemed Rejecting Classes") are Impaired under the Plan, are entitled to no recovery under the Plan, and are therefore deemed to have rejected the Plan.

15.　　As evidenced by the Voting Report, Class 3 voted to reject the Plan in accordance with section 1126 of the Bankruptcy Code.

**L.  Bankruptcy Rule 3016.**

16.　　The Plan and all modifications thereto are dated and identify the Entities submitting them, thereby satisfying Bankruptcy Rule 3016(a).　Pursuant to section 1125(f)(1) of the Bankruptcy Code, the Plan contains adequate information and a separate disclosure statement is not needed.　The injunction, release, and exculpation provisions in the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

**M. Burden of Proof.**

17.    The Debtors and Purchaser, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1191 of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation. Further, the Debtors have proven the elements of sections 1129(a) and 1191 by clear and convincing evidence. Each declarant whose declarations were submitted on behalf of the Debtors in connection with Confirmation was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

### N.  Compliance with the Requirements of Section 1129 of the Bankruptcy Code.

18.    The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

### Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.

19.    The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

### Sections 1122 and 1123(a)(1)—Proper Classification.

20.    The Plan satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code. Article IV of the Plan provides for the separate classification of Claims and Interests into seven different Classes, based on differences in the legal nature or priority of such Claims and Interests and the consent of certain Holders of such Claims to such separate classification (other than Administrative Claims, DIP Claims, Professional Fee Claims, and Priority Tax Claims, which are addressed in Article III of the Plan and are not required to be designated as separate Classes by section 1123(a)(1) of the Bankruptcy Code). Valid business, factual, and legal reasons exist for the separate classification of such Claims and Interests, such classifications were not implemented for any improper purpose and do not unfairly discriminate between, or among, holders of Claims and Interests. Each Class of Claims or Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that

Class.

**Section 1123(a)(2)—Specification of Unimpaired Classes.**

21.      The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article IV of the Plan specifies that Claims in Classes 1 and II are Unimpaired under the Plan and Claims and Interests in Classes 4 and 5 are either Impaired or Unimpaired under the Plan. In addition, Article III of the Plan specifies that Professional Fee Claims and DIP Claims are Unimpaired, although the Plan does not classify these Claims.  The fees of the Subchapter V Trustee shall be treated as Professional Fee Claims.

**Section 1123(a)(3)—Specification of Treatment of Impaired Classes.**

22.      The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article IV of the Plan specifies the treatment of each Impaired Class under the Plan.

**Section 1123(a)(4)—No Discrimination.**

23.      The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. Article III of the Plan provides the same treatment to each Claim or Interest in any particular Class, as the case may be, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.

**Section 1123(a)(5)—Adequate Means for Plan Implementation.**

24.      The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan and the various documents included in the Plan Supplement provide adequate and proper means for the Plan's execution and implementation.

**Section 1123(a)(6)—Non-Voting Equity Securities.**

25.      The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code. The Plan does not provide for the issuance of non-voting equity securities.

**Section 1123(a)(7)—Directors, Officers, and Trustees.**

26.      The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

Article V(E)(8) of the Plan discharges all of the Debtors' officers, directors, members, and managers from their duties effective as of the Effective Date without any further action. Article V(E)(4) and V(F)(5) also provide for the continuation of the Reorganized Debtors. The identities and affiliations of the directors of the Reorganized Debtors (the "New Directors") are set forth in the Plan Supplement. The selection of the New Directors is consistent with the interests of Holders of Claims and Interests and public policy.

**Section 1123(b)—Discretionary Contents of the Plan.**

27.    The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, the Plan satisfies section 1123(b).

**Impairment/Unimpairment of Any Class of Claims or Interests.**

28.    Pursuant to the Plan, Article IV of the Plan impairs or leaves Unimpaired, as the case may be, each Class of Claims and Interests, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

**Assumption and Rejection of Executory Contracts and Unexpired Leases.**

29.    Under Article VI of the Plan, the Plan provides for the rejection of the Debtors' Executory Contracts and Unexpired Leases as of the Confirmation Date, effective as of the Effective Date, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the any sale transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (5)

is a D&O Liability Insurance Policy. Additionally, as part of the Plan Supplement, the Debtors have filed a Schedule of Rejected Executory Contracts and Unexpired Leases with specified rejection dates. Entry of this Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**Independent Investigation.**

30.     On April 3, 2020, the Board of SRHI appointed Pamela B. Corrie as an independent director.  Ms. Corrie does not have any connections to the Debtors or any other creditor or known interested party in the Chapter 11 Cases, including the DIP Lenders.  Ms. Corrie was directed to investigate whether any viable causes of action existed against the DIP Lenders (such investigation, the "Independent Investigation").  The focal point of the Independent Investigation was the amended complaint filed on May 1, 2020 by one of SRHI's shareholders and the former chief executive officer, Kristofor Lofgren.

31.     The Independent investigation involved the review of numerous documents and interviews of the persons involved in the transactions.

32.     As determined by her Independent Investigation, Ms. Corrie concluded that: (i) the Debtors had a factual basis to terminate Kristofor Lofgren; (ii) SRHI's Board exercised its reasonable business judgment in electing to terminate Mr. Lofgren for cause; (iii) the DIP Lenders all held minority shareholder interest in SRHI and they did not exert the level of domination and control needed to impose fiduciary duties; and (iv) the DIP Lenders performed their prepetition contractual obligations to the Debtors.

33.     Pursuant to the Independent Investigation, Ms. Corrie concluded that there are no colorable claims or causes of action existed against the DIP Lenders and their related parties released in connection with the DIP Facility.  No party challenged the Debtors' release of the direct

and derivative claims against the Released Parties (as defined in the DIP Orders) under the DIP Orders.

**Compromise and Settlement.**

34.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan and with the support of the DIP Lenders, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that all Holders of Claims and Interests may have with respect to any Allowed Claim or Interest, as applicable, or any distribution to be made on account of such Allowed Claim or Interest. Such compromise and settlement is fair, equitable, and reasonable and in the best interests of the Debtors and their Estates.

**Debtor Release.**

35.     In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, the releases of claims and Causes of Action by the Debtors described in Article XI(D) of the Plan (the "Debtor Release") represent a valid exercise of the Debtors' business judgment under Bankruptcy Rule 9019 and is an essential provision of the Plan. The Debtors' or the Reorganized Debtors' pursuit of any such claims against the Released Parties is not in the best interests of the Estates' various constituencies because the costs involved would likely outweigh any potential benefit from pursuing such claims. The Plan, including the Debtor Release, was negotiated by sophisticated parties represented by able counsel and financial advisors. The Debtor Release is therefore the result of an arm's-length negotiation process.

36.     The scope of the Debtor Release is appropriately tailored under the facts and circumstances of the Chapter 11 Cases. The Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and

compromise of the claims released by such releases; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors or their Estates asserting any Claim or Cause of Action released pursuant to such release. In light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical nature of the Debtor Release to the Plan, the Debtor Release is approved.

**Release by Holders of Claims and Interests.**

37.     The release by the Releasing Parties (the "Third-Party Release"), set forth in Article XI(E) of the Plan, is an essential provision of the Plan. The scope of the Third-Party Release in the Plan is appropriately tailored under the facts and circumstances of these Chapter 11 Cases, and the Releasing Parties received due and adequate notice of the Third-Party Release. The Third-Party Release is: (a) consensual; (b) in exchange for the good and valuable consideration provided by the Released Parties; (c) a good-faith settlement and compromise of the claims and Causes of Action released by the Third-Party Release; (d) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders, and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in the Chapter 11 Cases; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) a bar to any of the Releasing Parties asserting any claim or Cause of Action released by the Third-Party Release against any of the Released Parties; given with the opportunity of parties to opt-out of the release and (i) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

38.     The Third-Party Release is an integral part of the Plan. Like the Debtor Release, the Third-Party Release facilitated participation of the Released Parties in both the Plan and the chapter 11 processes generally. The Third-Party Release is instrumental to the Plan and was critical in incentivizing the Released Parties to support the Plan and preventing potentially significant and

time-consuming litigation regarding the parties' respective rights and interests.

39.      Furthermore, the Third-Party Release is consensual as the Releasing Parties were provided adequate notice of the chapter 11 proceedings, the Plan, and the deadline to object to confirmation of the Plan, and voting creditors and interest holders were given the opportunity to opt out of the Third-Party Release, and the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan and the ballots. Among other things, the Plan provides appropriate and specific disclosure with respect to the claims and Causes of Action that are subject to the Third-Party Release, and no other disclosure or notice is necessary. The Third-Party Release is specific in language, integral to the Plan and given for substantial consideration. In light of the foregoing, the Third-Party Release is approved.

**Exculpation.**

40.      The exculpation provisions set forth in Article XI(F) of the Plan are essential to the Plan (the "Exculpation"). The Exculpation is essential to the Plan and appropriately affords protection to certain parties who constructively participated in and contributed to the Debtors' chapter 11 process. The record in the Chapter 11 Cases fully supports the Exculpation, which is appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

**Injunction.**

41.      The injunction provisions set forth in Article XI(G) of the Plan are essential to the Plan and are necessary to implement the Plan, the Debtor Release, the Third-Party Release, and the Exculpation provisions in Article XI of the Plan. Such injunction provisions are appropriately tailored to achieve those purposes.

**Preservation of Claims and Causes of Action.**

42.      Article V(F)(10) of the Plan appropriately provides for the preservation by the Debtors of certain Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. Causes of Action not released by the Debtors, sold to the Purchaser, or exculpated under the

12

Plan shall vest in the Reorganized Debtors as provided by the Plan.  The Reorganized Debtors, on and after the Effective Date, may enforce all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

**Lien Releases.**

43.    Except as otherwise specifically provided in this Confirmation Order, the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, or executed in connection therewith, to implement the Plan, on the Effective Date, all Liens on any property of any Debtors or the Reorganized Debtors shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any Debtors or the Reorganized Debtors shall be automatically discharged and released.  For the avoidance of doubt, the Liens secured the DIP Claims shall not be released until the DIP Claims have been paid indefeasibly in full in Cash or the DIP Lenders agree otherwise in their sole discretion.

**Additional Plan Provisions.**

44.    The other discretionary provisions of the Plan, including the Plan Supplement, are appropriate and consistent with applicable provisions of the Bankruptcy Code, including, without limitation, provisions for the allowance of certain Claims and Interests, treatment of indemnification obligations, and the retention of court jurisdiction.

**Section 1123(d)—Cure of Defaults.**

45.    Article VI(C) of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code. Any monetary defaults under each Assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash, subject to the limitations described in Article VI(C) of the Plan,

13

or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any disputed cure amounts will be determined in accordance with the procedures set forth in Article VI(C) of the Plan, and applicable bankruptcy and nonbankruptcy law. As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

### Section 1129(a)(2)—Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code.

46.     The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1126, 1128, 1129, 1181(b) and with Bankruptcy Rules 2002, 3017, 3018, and 3019.  The Debtors and their agents have solicited and tabulated votes on the Plan in good faith and in a manner consistent with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations and are entitled to the protections afforded by the Exculpation provisions set forth in Article XI(F) of the Plan.

47.     The Debtors and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

### Section 1129(a)(3)—Proposal of Plan in Good Faith.

48.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

The Debtors have proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The Debtors' good faith is evident from the facts and the record of the Chapter 11 Cases and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.

49.     The Plan is the product of good faith, arm's-length negotiations by and among the Debtors, the Debtors' directors, officers and managers, the DIP Lenders, and certain other stakeholders involved in the Chapter 11 Cases. The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' and such other parties' good faith, serve the public interest, and assure fair treatment of holders of Claims and Interests. Consistent with the overriding purpose of chapter 11, the Debtors filed the Chapter 11 Cases and the Plan was negotiated and proposed with the legitimate purpose of maximizing stakeholder value and for no ulterior purpose.

**Section 1129(a)(5)—Disclosure of Directors, Officers and Managers and Consistency with the Interests of Creditors and Public Policy.**

50.     Because the Plan provides for the liquidation of the Estates' assets and resignation of the Debtors' officers, directors, and managers, section 1129(a)(5) of the Bankruptcy Code does not apply. To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Reorganized Debtors, the Debtors have satisfied the requirements of this provision by, among other things, disclosing the identity and affiliations of the New Directors.

**Section 1129(a)(6)—Rate Changes.**

51.     Section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan. The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and therefore will not require governmental regulatory approval.

**Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

52.     The Debtors have demonstrated that the Plan is in the best interests of their creditors and equity holders and the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied. The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing, and the facts and circumstances of the Chapter 11 Cases, establishes that each Holder of Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

**Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Certain Impaired Classes; Fairness of Plan with Respect to Deemed Rejecting Class.**

53.     The Deemed Accepting Classes are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Nevertheless, because the Plan has not been accepted by the Classes 6 and 7 (the "Rejecting Classes"), not all classes have accepted the Plan.  However, Pursuant to section 1191(b) of the Bankruptcy Code, the Debtors are not required to satisfy section 1129(a)(8) of the Bankruptcy Code if the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that are impaired under the plan and have not accepted, the plan.

**Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

54.     The treatment of Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims under Article III of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**Section 1129(a)(10)—Acceptance by at Least One Impaired Class.**

55.     Pursuant to the Plan, Class 3 is the only impaired Class entitled to vote.  Class 3 has not voted to accept the Plan.  Nevertheless, pursuant to 1191(b) of the Bankruptcy Code, the Plan

may be confirmed without an accepting impaired class if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims an interests that has not accepted the Plan.

**Section 1129(a)(11)—Feasibility of the Plan.**

56.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtors at or before the Confirmation Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization; and (d) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan.

**Section 1129(a)(12)—Payment of Statutory Fees.**

57.     The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article III(D) of the Plan provides for the payment of all fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at the Confirmation Hearing in accordance with section 1128 of the Bankruptcy Code.

**Section 1129(a)(13)—Retiree Benefits.**

58.     The Debtors do not have any remaining obligations to pay retiree benefits (as defined in section 1114 of the Bankruptcy Code). Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases or the Plan.

**Section 1129(a)(14), (15), and (16)—Domestic Support Obligations, Individuals, and Nonprofit Corporations.**

59.     The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations. Therefore, sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

**Section 1129(d)—Principal Purpose of the Plan.**

60.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.  As evidenced by its terms, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C. § 77e.

**Section 1129(e)—Small Business Cases.**

61.    The  Chapter 11 Cases are small business cases, and accordingly, section 1129(e) of the Bankruptcy Code is no applicable to these cases by operation of section 1181 of the Bankruptcy Code.

**Satisfaction of Confirmation Requirements.**

62.    Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Debtors, as applicable, satisfy all the requirements for plan confirmation set forth in section 1129 as modified by section 1191 of the Bankruptcy Code.

**Good Faith.**

63.    Based on the record in the Chapter 11 Cases, the Debtors and the Released Parties (including the DIP Lenders and Sale Parties) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including any action or inaction in connection with their participation in the activities described in section 1125 of the Bankruptcy Code.

64.    The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders. The Plan is the product of extensive collaboration among the Debtors and key stakeholders and accomplishes this goal.  Accordingly, the Debtors or the Reorganized Debtors, as appropriate, have been, are, and will continue acting in good faith if they proceed to: (a) consummate the Plan, the

Restructuring Transactions, and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this Confirmation Order. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code. The Sale Parties and DIP Lenders have acted in good faith in submitting the Asset Purchase Agreement and in negotiating the terms of the Plan. Accordingly, the Debtors, DIP Lenders, Sale Parties, and the other Released Parties have been, are, and will continue to act in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby, including pursuant to the Asset Purchase Agreement; and (b) take the actions authorized, directed or contemplated by this Confirmation Order. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the aforementioned parties have also acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code.

65. The Purchaser is purchasing the Purchased Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is, therefore, entitled to the full protection of section 363(m) of the Bankruptcy Code, and the Purchaser otherwise has proceeded in good faith in all respects in connection with these Chapter 11 Cases in that, *inter alia*: (a) the Purchaser and DIP Lenders recognized that the Debtors were free to deal with any other party interested in acquiring any or all of the Purchased Assets; (b) the Purchaser and DIP Lenders complied with the provisions in the Bidding Procedures Order; (c) the Purchaser agreed to subject its bid to the competitive Bidding Procedures set forth in the Bidding Procedures Order; (d) the Purchaser in no way induced or caused the chapter 11 filing by any of the Debtors; (e) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Asset Sale have been disclosed; (f) the Purchaser has not violated section

363(n) of the Bankruptcy Code by any action or inaction; and (g) the negotiation and execution of the Asset Purchase Agreement and any other agreements or instruments related thereto were at arms' length and in good faith.  In the absence of a stay pending appeal, the Purchaser, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the Asset Sale contemplated by the Asset Purchase Agreement at any time after entry of this Confirmation Order, and cause has been shown as to why this Confirmation Order should not be subject to any stay provided by Bankruptcy Rules 6004(h) and 6006(d) or otherwise.

**Disclosure: Agreements and Other Documents.**

66.     The Debtors have disclosed all material facts, to the extent applicable, regarding: the identity and affiliations of the New Directors; (b) the method and manner of distributions under the Plan; (c) the adoption, execution, and implementation of the other matters provided for under the Plan, including those involving corporate action to be taken by or required of the Debtors or Reorganized Debtors, as applicable; (d) the exemption under section 1146(a) of the Bankruptcy Code; (e) the retained Causes of Action; and (f) the adoption, execution, and delivery of all contracts, leases, instruments, securities, releases, indentures, and other agreements related to any of the foregoing.

**Conditions to Effective Date.**

67.     The Plan shall not become effective unless and until the conditions set forth in Article XII(A) of the Plan have been satisfied or waived pursuant to Article XII(B) of the Plan.

**Implementation.**

68.     All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution,

be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The documents and agreements are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such document or agreement is in the best interests of the Debtors, the estates, and the holders of Claims and Interests. The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The Debtors are authorized to take any action reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

**Vesting of Assets.**

69.    Except as otherwise provided in the Plan, the Asset Purchase Agreement, or any agreement, instrument, or other document incorporated herein or therein, on the Effective Date, the assets of the Debtors shall vest in the Reorganized Debtors for the purpose of liquidating the Estates, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided for in the Plan or the Asset Purchase Agreement, the Debtors and the Reorganized Debtors may operate their business and use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  The transfer of the Purchased Assets to the Purchaser, as of the Closing Date under the Asset Purchase Agreement, shall constitute a legal, valid, and effective transfer of the Debtors' interest in such asset, and vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Encumbrances (as defined below) accruing, arising or relating to any time prior to the Closing Date, except for the Permitted Encumbrances and Assumed Liabilities under the Asset Purchase Agreement, with all Encumbrances attaching to the net cash proceeds of the Asset Sale, if any, attributable to the

Purchased Assets in which such holder alleges an Encumbrance, in the same order of priority, with the same validity, force and effect that such Encumbrance had prior to the Asset Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

**Treatment of Executory Contracts and Unexpired Leases.**

70.     Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Confirmation Date, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date except where otherwise indicated. The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, holders of Claims and Interests and other parties in interest in the Chapter 11 Cases.

**Objections.**

71.     All parties have had a full and fair opportunity to litigate all issues raised in the objections to Confirmation of the Plan, or which might have been raised, and the objections have been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set forth in this Confirmation Order.

## II.  <u>ORDER</u>

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

72.     This Confirmation Order confirms the Plan attached hereto in its entirety as modified herein.   Article I(A)(92) is hereby modified in its entirety to read as follows: "'*Reorganized SRHI*' means SRHI, as reorganized pursuant to and under the Plan."

73.     This Confirmation Order approves the Plan Supplement (including specifically, and without limitation, the Asset Purchase Agreement) and authorizes the parties to execute the

documents contained therein, as they may be amended by this Confirmation Order or otherwise through and including the Effective Date in accordance with and as permitted by the Plan. The terms of the Plan, the Plan Supplement, and the exhibits thereto are incorporated herein by reference and are an integral part of this Confirmation Order; *provided* that if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control solely to the extent of such conflict.  Section 2.1(r) of the Asset Purchase Agreement is hereby modified in its entirety to read as follows: "all the equity interest that SR Holdings owns in Bamboo Sushi, LLC, Quickfish LLC, and SRG Operations, LLC (together with the other Seller Subsidiaries set forth on <u>Schedule I</u>, the 'Acquired Subsidiaries');".

74.    All Holders of Claims that voted to accept the Plan are conclusively presumed to have accepted the Plan.

75.    The terms of the Plan, the Plan Supplement, all exhibits thereto, and this Confirmation Order shall be effective and binding as of the Effective Date on all parties in interest, including, but not limited to: (a) the Debtors; (b) the DIP Lenders; and (c) all holders of Claims and Interests.

76.    The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Bankruptcy Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

### A.    Objections.

77.    To the extent that any objections (including any reservations of rights contained therein) to Confirmation have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such objections

(including any reservation of rights contained therein) are hereby overruled in their entirety and on their merits.

**B.     Findings of Fact and Conclusions of Law.**

78.     The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing in relation to Confirmation, including the Confirmation Ruling, are hereby incorporated into this Confirmation Order. To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such.  To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Bankruptcy Court, it is adopted as such.

**C.     Post-Confirmation Modification of the Plan.**

79.     Subject to the limitations and terms contained in Article XIII(A) of the Plan, the Debtors are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section XIII of the Plan.

**D.     Plan Classification Controlling.**

80.     The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder and the classifications set forth on the ballots tendered to or returned by the holders of Claims or Interests in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Interest as representing the actual classification of such Claim

24

or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

### E.    Restructuring Transactions; Sale Provisions.

81.    On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors shall take all actions to effectuate the Restructuring Transactions, including, without limitation: (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Restructuring Transactions; (e) all transactions necessary to provide for the purchase of substantially all of the assets of, or Interests in, any of the Debtors by the Purchaser or by one or more Entities to be wholly owned by the Purchaser or the Reorganized Debtors (or any of them), which purchase may be structured as a taxable transaction for United States federal income tax purposes; and (f) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

82.    Pursuant to sections 105(a), 363(b), 363(f), 365(b), 365(f), 1123(a)(5)(B) and 1123(a)(5)(D) of the Bankruptcy Code, the Debtors are authorized to transfer the Purchased Assets to the Purchaser on the Closing Date under the Asset Purchase Agreement.  The Purchased Assets (including the Assumed Contracts) shall be transferred to the Purchaser upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of the Debtors' interest in such Purchased

Assets and, upon the Debtors' receipt of the Purchase Price, shall be free and clear of any lien (including a "lien" as defined in section 101(37) of the Bankruptcy Code), encumbrance, Claim, right, demand, charge, mortgage, deed of trust, lease, option, pledge, security interest or similar interest, title defect, hypothecation, easement, right of way, restrictive covenant, encroachment, right of first refusal, preemptive right, proxy, voting trust or agreement, transfer restriction under any shareholder agreement or similar agreement, judgment, conditional sale or other title retention agreement or other imposition, imperfection or defect of title or restriction on transfer or use of any nature whatsoever (collectively, the "Encumbrances"), except for the Assumed Liabilities under the Asset Purchase Agreement. Upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets, subject only to the Assumed Liabilities, and the Purchased Assets shall thereafter be the sole and exclusive property of the Purchaser and not be deemed property of the Debtors or their estates for any purpose after the Closing. All Encumbrances shall attach solely to the net proceeds of the Asset Sale with the same validity, priority, force and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

83.    The sale of the Purchased Assets to the Purchaser, and the assumption and assignment of the Assumed Contracts to the Purchaser, shall be, except as otherwise provided in the Asset Purchase Agreement with respect to the Assumed Liabilities or set forth in this Confirmation Order, free and clear of all Encumbrances of any kind or nature whatsoever, or if the Purchaser would, or in the future could (except and only to the extent expressly provided in the Asset Purchase Agreement and with respect to the Assumed Liabilities), be liable for any of such Encumbrances, including, but not limited to in respect of the following: (1) all mortgages, deeds of trust and security interests; (2) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (3) any other labor or employment, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to any of the following, as they may be amended from time to time (a) ERISA, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker

Adjustment and Retraining Notification Act of 1988, (g) the Age Discrimination In Employment Act of 1967 (including Older Workers Benefit Protection Act), (h) the Americans with Disabilities Act of 1990 (including the ADA Amendments Act of 2008), (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (1) any other state or federal labor or employment or benefit claims relating to any employment with any of the Debtors or any of their respective predecessors; (4) any bulk sales or similar law; (5) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (6) any theories of transferee or successor liability, to the extent allowed by applicable law, except as otherwise set forth in this Confirmation Order.

F.    **Corporate Action.**

84.    On the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable: (1) the implementation of the Restructuring Transactions; (2) the selection and appointment of the New Directors; and (3) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtors, and any corporate action required by the Debtors, or the other Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors, or the Reorganized Debtors. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, and any and all other agreements, documents, securities, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court.

**G.      Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors.**

85.      Except as otherwise provided in the Plan or this Confirmation Order, on and after the Effective Date, the Reorganized Debtors shall continue in existence for purposes of (a) winding down the Debtors' business and affairs as expeditiously as reasonably possible, (b) resolving Disputed Claims, (c) making distributions on account of Allowed Claims as provided hereunder, (d) establishing and funding the Distribution Reserve Accounts, (e) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Retained Causes of Action List in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (f) filing appropriate tax returns, (g) complying with its continuing obligations under the Purchase Agreements, if any, and (h) administering the Plan in an efficacious manner.  The Reorganized Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Reorganized Debtors to file motions or substitutions of parties or counsel in each such matter.

**H.      Plan Implementation Authorization.**

86.      The Debtors or the Reorganized Debtors, as the case may be, and their respective directors, officers, members, agents, and attorneys, financial advisors, and investment bankers are authorized and empowered from and after the date hereof to negotiate, execute, issue, deliver, implement, file, or record any contract, instrument, release, or other agreement or document related to the Plan, as the same may be modified, amended and supplemented, and to take any action necessary or appropriate to implement, effectuate, consummate, or further evidence the Plan in accordance with its terms and the terms hereof, or take any or all corporate actions authorized to be taken pursuant to the Plan or this Confirmation Order, whether or not specifically referred to in

the Plan or any exhibit thereto, without further order of the Bankruptcy Court. To the extent applicable, any or all such documents shall be accepted upon presentment by each of the respective state filing or recording offices and filed or recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law. Pursuant to section 303 of the General Corporation Law of the State of Delaware and any comparable provision of the business corporation laws of any other state, as applicable, no action of the Debtors or Reorganized Debtors' boards of directors will be required to authorize the Debtors or Reorganized Debtors, as applicable, to enter into, execute and deliver, adopt or amend, as the case may be, any such contract, instrument, release, or other agreement or document related to the Plan, and following the Effective Date, each of the Plan documents will be a legal, valid, and binding obligation of the Debtors or Reorganized Debtors, as applicable, enforceable against the Debtors and the Reorganized Debtors in accordance with the respective terms thereof. The Reorganized Debtors may also, consistent with the Plan, take any additional steps on and after the Effective Date to consolidate and streamline their organization, including, among other things, the merger, liquidation, or consolidation of one or more of the Debtors or Reorganized Debtors.

I.     **Cancellation of Notes, Instruments, Certificates, and Other Documents.**

87.     On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be canceled and deemed surrendered as to the Debtors and shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of

incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, and compromised.

**J.     Approval of Consents and Authorization to Take Acts Necessary to Implement Plan.**

88.     This Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

**K.     The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.**

89.     The releases, injunctions, exculpations, and related provisions set forth in Article XI of the Plan are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Bankruptcy Court or any other party.  Notwithstanding the forgoing, as set forth on Exhibit B to the Voting Report, Mr. Kristofor Lofgren has opted-out of the Third-Party Release contained in Article XI(E) of the Plan and is not a Releasing Party as defined in the Plan.

**L.     Assumption and Cure of Executory Contracts and Unexpired Leases.**

90.     The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article VI of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

91.     For the avoidance of doubt, on the Effective Date, except otherwise agreed to by the Debtors and the counterparty to an Executory Contract or Unexpired Lease, all Executory

Contracts and Unexpired Leases shall be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, effective as of the Effective Date, other than any Executory Contract or Unexpired Lease that: (a) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (b) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (c) is to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, in connection with the any sale transaction; (d) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (e) is a D&O Liability Insurance Policy. Unless otherwise specified on a schedule to the Plan or Plan Supplement notice sent to a given party, each Executory Contract and Unexpired Lease listed or to be listed thereon shall include any and all modifications, amendments, supplements, restatements and other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract or Unexpired Lease, without regard to whether such agreement, instrument or other document is listed thereon.

92.      Unless a party to an Executory Contract objects to the cure amounts identified in the Plan Supplement and any amendments thereto, as applicable, the Debtors shall pay such cure amounts in accordance with the terms of the Plan and the assumption of any Executory Contract or Unexpired Lease, pursuant to the Plan or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. Any disputed cure amounts shall be determined in accordance with the procedures set forth in Article

VI(C) of the Plan, and applicable bankruptcy and nonbankruptcy law.

**M.      Rejection of Executory Contracts and Unexpired Leases.**

93.      The Plan Supplement constituted sufficient notice of the rejection of the executory contracts and unexpired leases listed thereon. This Confirmation Order constitutes approval of such assumptions or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan or the Plan Supplement pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the effective date of rejection (the "Rejection Date") for each lease of non-residential real property shall be the date mutually agreed to by the Debtors and the landlord or, if not mutually agreed, the later of (i) the Effective Date, and (ii) the date the Debtors relinquish control of the premises by notifying the affected landlord in writing of the Debtors' surrender of the premises and (A) turning over keys, key codes, and security codes, if any, to the affected landlord or (B) notifying the affected landlord in writing that the keys, key codes, and security codes, if any, are not available, but the landlord may rekey the leased premises.

94.      Pursuant to 11 U.S.C. § 554(a), the Debtors are authorized to abandon, and are deemed to have abandoned, any remaining personal property located in a store associated with the rejected Unexpired Lease as of the Rejection Date (the "Abandoned Property"). Landlord counterparties may, in their sole discretion and without further delay, notice to any party, or order of this Bankruptcy Court, utilize and/or dispose of such Abandoned Property without notice or liability to the Debtors or any third parties and, to the extent applicable, the automatic stay is modified to allow such disposition. Landlord counterparties reserve any and all rights to assert Claims for any costs of disposing of such Abandoned Property in accordance with the Plan, and the Debtors and other parties in interest reserve any and all rights to object to any such claims.

**N.      Provisions Governing Distributions.**

95.    The distribution provisions of Article VII of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Reorganized Debtors shall make all distributions required under the Plan. The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.  For the avoidance of doubt, the Subchapter V Trustee shall not act as the disbursing agent under the Plan.

**O.    Release of Liens.**

96.    Except as otherwise specifically provided in this Confirmation Order, the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, or executed in connection therewith, to implement the Plan, on the Effective Date, all Liens on any property of any Debtors or the Reorganized Debtors shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any Debtors or the Reorganized Debtors shall be automatically discharged and released.  For the avoidance of doubt, the Liens secured the DIP Claims shall not be released until the DIP Claims have been paid indefeasibly in full in Cash or the DIP Lenders agree otherwise in their sole discretion.

**P.    Post-Confirmation Notices, Professional Compensation, and Bar Dates.**

97.    In accordance with Bankruptcy Rules 2002 and 3020(c), no later than ten Business Days after the Effective Date, the Reorganized Debtors must cause notice of Confirmation and occurrence of the Effective Date (the "Notice of Effective Date") to be served by United States mail, first-class postage prepaid, by hand, by overnight courier service, or by electronic service to all parties served with the Confirmation Hearing Notice; *provided*, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that

Entity's new address.  For those parties receiving electronic service, filing on the docket is deemed sufficient to satisfy such service and notice requirements.

98.     Solely for purposes of lien recordation, the Notice of Effective Date will have the effect of an order of the Bankruptcy Court, will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

99.     Professionals or other Entities asserting a Professional Fee Claim for services rendered prior to the Confirmation Date must File an application for final allowance of such Professional Fee Claim no later than 45 days after the Effective Date. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount this Bankruptcy Court allows, including from the Professional Fee Escrow Account, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date.  The fees of the Subchapter V Trustee shall be treated as Professional Fee Claims.

100.    Except as otherwise provided in the Plan, requests for payment of Administrative Claims must be Filed no later than the Administrative Claim Bar Date. Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Reorganized Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Reorganized Debtors or any action by the Bankruptcy Court.

101.    Notwithstanding any provision of the Plan or this Confirmation Order to the contrary, counterparties to Assumed Executory Contracts or Unexpired Leases who (a) have filed an objection to the Debtors' proposed Cure Claim or (b) agree with the Cure Claim listed by the

Debtors in the Schedule of Assumed Executory Contracts and Unexpired Leases (as amended, supplemented, or modified from time to time), shall not be required to assert an Administrative Claim for such asserted Cure Claims.

**Q.    Notice of Subsequent Pleadings.**

102.    Except as otherwise provided in the Plan or in this Confirmation Order, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date will be limited to the following parties:  (a) the Reorganized Debtors and their counsel; (b) the U.S. Trustee; (c) the DIP Lender, (d) any party known to be directly affected by the relief sought by such pleadings; and (e) any party that specifically requests additional notice in writing to the Debtors or Reorganized Debtors, as applicable, or files a request for notice under Bankruptcy Rule 2002 after the Effective Date. The Notice and Claims Agent shall not be required to file updated service lists.

**R.    Section 1146 Exemption.**

103.    Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, to the fullest extent contemplated by section 1146(a) of the Bankruptcy Code, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**S.    Preservation of Causes of Action.**

104.    Except as otherwise provided in the Plan or this Confirmation Order (including the Debtor Release, the Third-Party Release) or in any contract, instrument, release or other agreement

entered into or delivered in connection with the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors shall have vested in them as of the Effective Date, and the Reorganized Debtors shall retain and may enforce, any claims, demands, rights, defenses and causes of action that the Debtor or the Estate may hold against any Entity. Each Reorganized Debtor or its successor may pursue such retained claims, demands, rights, defenses or causes of action, as appropriate, and may settle such claims after the Effective Date without notice to parties in interest or approval of this Bankruptcy Court.

**T.    Effectiveness of All Actions.**

105.    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, before, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the Debtors and/or the Reorganized Debtors and their respective directors, officers, members, or stockholders, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

**U.    Binding Effect.**

106.    On the date of and after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and this Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors or the Reorganized Debtors, as applicable, any and all holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or this Confirmation Order, and any and all non- Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims and Interests shall be as

fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or Interest has voted on the Plan.

107.     Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Confirmation Order, all prior orders entered in the Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before this Bankruptcy Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Reorganized Debtors and their respective successors and assigns.

108.     The Plan, all documents and agreements executed by the Debtors in connection therewith, this Confirmation Order, and all prior orders of the Bankruptcy Court in the Chapter 11 Cases shall be binding against and binding upon and shall not be subject to rejection, modification, or avoidance by any Chapter 7 or Chapter 11 trustee appointed in any of the Chapter 11 Cases or any Successor Cases (as defined in the DIP Orders).

## V.     Claims Reconciliation Process.

109.     The procedures and responsibilities for, and costs of, reconciling Disputed Claims shall be as set forth in the Plan or as otherwise ordered by the Bankruptcy Court.

## W.     Professional Compensation and Reimbursement Claims.

110.     Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or Reorganized Debtors may employ and pay any Professional

in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**X.      Nonseverability of Plan Provisions upon Confirmation.**

111.    Notwithstanding the possible applicability of Bankruptcy Rules 3020(e), 6004(h), 6006(d), 7062, 9014, or otherwise, the terms and conditions of this Confirmation Order will be effective and enforceable immediately upon its entry. Each term and provision of the Plan, and the transactions related thereto as it heretofore may have been altered or interpreted by the Bankruptcy Court is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified except as provided by the Plan or this Confirmation Order; and (c) nonseverable and mutually dependent.

**Y.      Authorization to Consummate.**

112.    The Debtors are authorized to consummate the Plan, including the Restructuring Transactions contemplated thereby, at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article XI of the Plan. The substantial consummation of the Plan, within the meaning of sections 1101(2) of the Bankruptcy Code, is deemed to occur on the first date, on or after the Effective Date, on which distributions are made in accordance with the terms of the Plan to holders of any Allowed Claims or Interests (as applicable).

**Z.      Injunctions and Automatic Stay.**

113.    Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the closing of these Chapter 11 Cases. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect.

**AA.**   **Termination of Subchapter V Trustee.**

114.   Upon the Effective Date, duties and obligations of the Subchapter V Trustee in these cases shall be terminated.

**BB.**   **Miscellaneous.**

115.   Nothing in this Confirmation Order shall be deemed to (a) grant or authorize liens on the Debtors' leasehold interests in real property or (b) grant or authorize rights in the Debtors' leasehold interests in real property to any party in a manner inconsistent with applicable law, including with respect to the terms of the leases.

**CC.**   **Effect of Conflict Between Plan and Confirmation Order.**

116.   In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan shall control. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

**DD.**   **Retention of Jurisdiction.**

117.   This Bankruptcy Court retains jurisdiction over the Chapter 11 Cases, all matters arising out of or related to the Chapter 11 Cases and the Plan, the matters set forth in Article XIV, and other applicable provisions of the Plan.

**EE.**   **Waiver of 14-Day Stay.**

118.   Notwithstanding Bankruptcy Rule 3020(e), and to the extent applicable, Bankruptcy Rules 6004(h), 7062, and 9014, this Confirmation Order is effective immediately and not subject to any stay.

**FF.**   **Final Order.**

119.   This Confirmation Order is a Final Order and the period in which an appeal must be filed will commence upon entry of this Confirmation Order.

**HH.**   **Provisions Regarding Cigna Health and Life Insurance Company.**

120.   The Administrative Services Contract (Level Funding) and the related Stop Loss

Policy (jointly, the "<u>Cigna Employee Benefits Agreements</u>") between Debtors and Cigna Health and Life Insurance Company are deemed mutually terminated as of July 31, 2020, unless, no later than 4:00 pm ET, July 17, 2020, Debtors provide Cigna (through its counsel) with written notice of Debtors' election to have the Employee Benefits Agreements assumed and assigned to the Purchaser as of the Closing Date, and, in lieu of cure, all obligations due and unpaid under the Cigna Employee Benefits Agreements accruing prior to the Closing Date shall pass through to the Purchaser and survive assumption and assignment so that nothing in this Sale Order or 11 U.S.C. §365 shall affect such obligations. The Debtors shall, not later than July 22, 2020, pay the administrative fees, stop loss premiums, and claims funding obligations due for July, 2020.

### III.   Provisions Regarding The Macerich Company.

121.   Notwithstanding the provisions under the Plan or this Confirmation Order, with respect to any unexpired lease (the "<u>Macerich Lease</u>") of The Macerich Company ("<u>Macerich</u>"), nothing in the Plan or in the Confirmation Order shall modify the Debtors' or any assignee's obligation, as applicable, to pay: (1) amounts owed under the Macerich Lease that are unbilled or not yet due as of the Confirmation Date, whether accruing prior to or after the effective date of assumption of such unexpired lease, such as for common area maintenance, insurance, taxes, and similar charges; and any regular or periodic ordinary course year-end adjustments and reconciliations of such charges provided for under the terms of the unexpired lease, whether accruing prior to or after the effective date of assumption of such unexpired lease, as such charges become due in the ordinary course in accordance with the terms of the unexpired lease; (2) any percentage rent that may come due under the assumed Macerich Lease; (3) any other obligations, including indemnification obligations (if any) that arise from third-party claims asserted with respect to or arising from the Debtors' use and occupancy of the premises under the Macerich Leases prior to the Effective Date for which the Debtors had a duty to indemnify such Macerich

pursuant to the Macerich Lease, or the Debtors' or any assignee's obligation to pay any postpetition expenses under the Macerich Lease as they come due under the unexpired leases; (4) any unpaid cure amounts or post-assumption obligations under the assumed Macerich Lease; and (5) any non-monetary defaults under the Macerich Lease; and nothing in the Plan or Confirmation Order shall waive any of Macerich's rights to setoff or recoupment.

122.    Any Rejection Date for Macerich's leases shall be no earlier than the date the Debtors have surrendered the Premises to the landlord with an unequivocal statement of abandonment.  Upon the Rejection Date, Macerich, with respect to each of its premises, is authorized to use or dispose of any abandoned property or assets without any further notice to any party or Court order, free and clear of all liens, claims, encumbrances, and interests, and without any liability to the Debtors, their estates, and any third party and without waiving any claim that Macerich may have against the Debtors and their estates.  To the extent applicable, the automatic stay is hereby modified to permit such use or disposition, including but not limited to the transfer of title by the applicable Debtor(s).  Macerich reserves all rights with respect to any property that is required to be removed prior to the Rejection Date.  Macerich shall have 30 days after the Rejection Date to file any rejection damages claim (or to amend any previously filed claims to include rejection damages).

**JOHN T. DORSEY**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: July 16th, 2020**
**Wilmington, Delaware**